My name is Bakri Kante, a payor for the petitioner, Mr. Rwaril. Your Honor, my client was denied his applications for asylum with holding and protection under CAD. And the IG's decision, which was confirmed by the BIA, basically outlined two reasons. One was a non-credibility finding. Second, lack of corroboration. On the issue of the non-credibility finding, the IG basically took one omission on the declaration, which was not mentioned on the declaration of my client that his mother was raped. Apart from that, my client testified consistently with what is provided in his written declaration. It was raped and murdered, wasn't it? I think he said he was killed, the mother was killed. He didn't only say he was raped and killed. So it's the rape aspect which has been taken out. Apart from that, the other factors. Well, why wasn't that included in the asylum application? Number one was it was filed by a non-lawyer at the time, even though I became a lawyer along the way. Unfortunately, I was involved in an accident prior to this matter. So, counsel, so you were the counsel in the first immigration case, too, and where there were a number of things not included and not filed and all of that. Have you ‑‑ and I understand there was also a reprimand related to this. What has been going on that you haven't been meeting these filing deadlines, especially where these clients who, you know, I mean, this one, he's married to a U.S. citizen and has a U.S. citizen child. He's on the verge of deportation. Your Honor, I believe these cases came pretty much at the same time, and there is actually a motion for continuance. Unfortunately, a lot of things happened outside of the record, and like in this situation, I know for sure I did file a timely motion for continuance. Unfortunately, it was a hostile situation, and from discussion with my client, we basically forced to proceed with the hearing. And as I said, a lot could have been done, but for the unique situation that I was involved in at the time, as I said, I did try to do my best. Unfortunately, maybe it fell short. Okay. Well, I think that is the key issue is this not mentioning the marriage and rape. Was that your fault or the client's fault? No. As I said, the client did mention that the mother was killed. The client never mentioned to me that my mother was raped, and this happened a lot sometimes, even for counsels. At the last testimony, clients come with issues totally which they have not provided to you. Did the asylum application say that the mother was killed by these people? Yes. People who made the home invasion? Yes. Okay. And so what is the relief that you're seeking here? You want a reversal of the average credibility and remand for an open record? Yes, Your Honor. Our belief is the non-credible finding just on a single omission of the mother not being raped. I thought the IJ also, or the BIA also, relied on the lack of corroboration so that, for example, Mr. Rewaral, and I apologize if I'm mispronouncing that, but he had said that he converted from Islam to Christianity, but he didn't bring in any evidence that he went to church or, you know, to the extent that that was relevant to his. I think he also said he couldn't get confirmation about the situation in Somalia because people wouldn't cooperate with him because he was. Your Honor, he did. Sorry. Yeah, go ahead. He did provide a baptismal record from the United States. Yeah, he did. Yeah, this is the one where he actually did provide a document. Yeah, he did provide on that issue that was a baptismal record which shows his conversion, and he clearly, from his original asylum application and his testimony, did indicate that he couldn't get much help from his community because of his conversion, and he was very consistent on that. Do you want to reserve the rest of your time? Yeah, I would. Good afternoon. May it please the Court. I'm Lyle Gensler. I represent the respondent, Attorney General Holder, today. They sent two of you from Washington, D.C.? Yes, Your Honor. Originally I had two cases. One fell out. My colleague has two. I think he'll be before you tomorrow morning. Okay. Sometimes the office happens. We hope you enjoy Seattle. Right. Thank you, Your Honor. The weather will be better over the weekend, so. Mr. Garwell failed to meet his burden of establishing his eligibility for asylum, withholding of removal, or care protection. The immigration judge and the board found that he failed to provide credible evidence demonstrating either past persecution or a well-founded fear of future persecution based on his alleged Klan membership and his conversion to Christianity. And also they found that he failed to adequately corroborate his claims. Because the record evidence does not compel a contrary conclusion, we would ask this Court to deny the petition for review. Well, your brief suggests, Counsel, that the petitioner wasn't credible because his application said that his sister was raped and left for dead while he testified that his sister was raped and killed. You're not arguing, are you, that those statements are inconsistent? No, we're not. But it's the mother. In the original asylum application, the written statement, he stated that his sister was raped and left for dead. When he testified, he claimed his mother had also been raped and killed. What your Honor is referring to is there was some confusion in the application as to which sister he was talking about. He never gave names. Did his application say that his mother had been killed? No. That's what was argued here. I believe I heard my opponent say that, but no. The actual application does not mention anything about the mother, which is why the immigration judge focused on that. But the immigration judge focused on much more than that. Essentially, we have no proof here, nothing except the petitioner's testimony, that he's even Somali, much less a member of the clan that he claims he is. He did submit a document, and the government will be up front about this, but it was not translated. And that, of course, under HCFR 100, actually 1000.333, all documents that are submitted to the court by either side must be translated. Counsel said that he asked for a continuance of this hearing to get better prepared, and it was denied. That is simply inaccurate, Your Honor. Counsel had claimed he had been in an auto accident, and that was what the continuance was about. It never said anything about getting better prepared. Well, obviously. I mean, you're obviously, if you've been in a car accident, you haven't been having the time to prepare. Well, Your Honor, he had been retained 11 months prior. But what's more important is if you look at the very beginning of the record, the immigration judge asks him, are you still requesting a continuance? It's my understanding that you're not, and counsel agrees with that. And counsel never raised in his brief to either the Board of Immigration Appeals or to this court that there was any problem with the continuance. I have to be honest, I had a little difficulty understanding. I didn't realize that counsel had said that to this court, and I apologize for that. But it was not raised below. It's not in his brief. It's not an issue here. So just let me ask you something. He is married to a U.S. citizen and has a U.S. citizen child. And it seems like this record was really confused and that perhaps there were some problems with counsel performing adequately for whatever reason may be outside the record. I'm just wondering if this isn't one of the things that the IJC is on. I'm just wondering if this isn't one that the administration would want to take to mediation or see what could be done about it. We would not. Because? On the issue that Your Honor just raised, the naturalization, unfortunately it has to come under 8 U.S.C. 1255. You're ineligible for that. Would you tell me what that section is? It's INA 245, but 8 U.S.C. 1255, and that talks about adjustment of status. Under almost all circumstances, you cannot adjust unless you came into the country legally. You were admitted. He was not admitted. There is an exception. That would be under 1255I. Which is? Which says, as relevant to this, that you have to have submitted your application by a certain time, which would be April, it's 21st, I believe. No, it's April 1st, 2001. He came in after that date. He's just not qualified under the statute. He cannot qualify. So he came in? He didn't come in lawfully on a visa? He did not, no. So he just showed up here? Wait, didn't he come in with a student visa and then? Okay, so I'm confusing the case. I'm not sure what case that is, but not this case. Okay, so how did he come in? He snuck in. He's very vague on the record, although I think I put in my brief where he transited through. But somebody helped him from Nairobi. After he was in Nairobi, he came up with enough money. He paid someone to help him out to come. I think he entered through Mexico. But either way, he did not have a valid passport. He never talked about the specifics of how he did it. He's not a visa overstay? No, he's not a visa overstay, Your Honor. So you think he's not eligible to apply for adjustment of status? That is correct. He's not eligible, which more important, his attorney understood that because it was discussed in front of the I.J. and the I.J. talks about it in his decision and also on the record, where he says, unfortunately, you just don't qualify under 1255I. That is, you had to have submitted by April 1, 2001, which he was not able to do because he came into the country later. Congress never made another exception to that rule. There's just no grounds for DHS. There's no way to maneuver to get that in now. Counsel also, you'll notice, did not raise the issue before the BIA because he was ineligible and he didn't raise it before this court. He mentions it in his brief, but nowhere does he actually argue. I am ineligible. I'm sorry, board erred by finding me ineligible. It is very unfortunate that he's ineligible. We understand he's got a U.S. citizen wife now, but he is ineligible. If he's ineligible because of the illegal entry, is there no part of the immigration laws in all their vastness and fairness that would let him apply? No. Congress had made an exception under this 1255I, but it expired, and he just didn't qualify under that, and they never extended that date. So he just cannot qualify for that particular form of relief. Now there are a bunch of other credibility problems and corroboration problems that go with this. Petitioners, Mr. Vowell has stated that he could not corroborate his claims because he's a Christian and he doesn't get along with the Somali community. One, what he actually said is, I never tried. More importantly, though, there are other ways to corroborate. He could have brought in an expert witness. He claims everyone knows that I'm a member of this tribe because of my skin color or mixed Arabic race. There's nothing in the record to support that. However, there might be treatises. You go on Google. There might be experts who can testify as to clan membership. Certainly there are other Somalis, and not all of them would be hostile to him. He speculated they would, but almost by definition, every Somali who's here claims he's here because he was persecuted because some larger clan persecuted his clan and went after them. Certainly not all of them would have been inimicable to helping him out, but he never tried. There's just too much that he didn't do to corroborate his claim. The immigration judge said, I don't really know what to believe because you never even spoke Somali. You've given me no evidence that you're even Somali, much less a member of the clan. I need some corroboration. There was no corroboration. Under this court's precedent, and this is a pre-Real ID Act case, in Chetub Insidu, he was required to produce easily available corroborating evidence if the immigration judge did not know what to believe. That was the case here. There was no effort to provide any corroboration. I am just about out of time, so subject to this court's further questions, I will conclude at this point. Thank you, Counsel. Thank you, Your Honor. We have a few minutes left. If you wish to respond. Your Honor, as I indicated earlier, my client has provided a reasonable explanation why there wasn't a corroboration evidence. As to what he could have done, he has provided an answer. The trial, the judge probably doesn't believe what he said. He doesn't say, I didn't do it. He says, they've been hostile to me, and that is indicated well, in fact, in his original application for asylum. He said, I couldn't get much support from my community because I'm a Christian. Whether he could have some other Somalis who could help him, from his point of view, he doesn't have it. And basically, we believe the IJ to determine him to be incredible, just because substantively he didn't mention that his mom was raped and killed, is not sufficient for the basis. Let me ask you a question on that. I thought I heard you, in your opening argument, say that the application had said his mother was killed, but it just didn't say she was raped. And your opposing counsel says that the application doesn't say that his mother was raped or killed, so that the application doesn't show that she was killed. Now, can you cite me to the record on that? And if, in fact, it did say she was killed, just tell me where that is, and I'll take a look at it later. Yes, ma'am. Okay. Why don't you look at it and hand us a note when you find the record. We'll submit the case, and if you find the place, hand the clerk a note with the ER on it. Yeah, I'll find it. I'm not so probably I may have, but I know in his testimony I can find the record. That was his specification. Why don't you find it and write it down and hand it to me. Just tell the clerk, and she'll give it to us. Right. Thank you. Thank you, counsel. Raul v. Holder will be submitted, and we will adjourn this session of court for today.
judges: Mills, Wardlaw, Gould